UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNEMIEKE E. ROELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 13-CV-0423-CVE-FHM |
| | ) |
| CAROLYN COLVIN, | ) |
| **Acting Commissioner, Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendants.** | ) |

# OPINION AND ORDER

Now before the Court is the Report and Recommendation (Dkt. # 17) of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the Commissioner's decision to deny plaintiff's application for disability benefits. Plaintiff Annemieke E. Roell has filed an objection (Dkt. # 18) to the report and recommendation, and she asks the Court to award disability benefits or remand the case for further proceedings. Defendant has not filed a response to plaintiff's objection.

## I.

On March 15, 2010, Roell filed an application for disability benefits and she alleged that she was unable to work as of March 1, 2009. Dkt. # 12-5, at 4. Roell's application was initially denied on August 11, 2010, and Roell requested reconsideration of that decision. Dkt. # 12-3, at 4; Dkt. # 12-4, at 13. The Social Security Administration (SSA) upheld its initial decision, and Roell was advised that she could request a hearing before an administrative law judge (ALJ). Id. at 15-16. Roell requested a hearing, and the hearing was set for February 29, 2012.

Roell appeared at the hearing and she was represented by an attorney. Roell was 54 years old at the time of the hearing and 51 years old at the time of the alleged onset of disability, and she was a widow. Dkt. # 12-2, at 27. She had attended college and she was a certified real estate appraiser. Id. at 28. At the alleged date of onset of disability, Roell was self-employed as a real estate appraiser, and she had been working as a real estate appraiser since 2004. Id. at 29. She had previously worked as a waitress and as an office manager for a computer company. Id. at 30. Roell testified that she stopped working in 2009 because her health deteriorated and she was constantly in pain. Id. at 31. Roell's health began to decline after she was diagnosed with breast cancer, and she claims that she began to suffer from dizziness and weakness after she underwent chemotherapy. Id. at 32. Roell hopes to return to her work as a real estate appraiser if her health improves. Id. She testified that she falls or stumbles every few days because of dizziness, and she suffers from chest pain, joint pain, and pain in her left leg. Id. at 33. In June 2010, she had surgery for cancer of the vulva and she still suffered pain from the surgery at the time of the hearing. Id. Roell testified that she can sit for approximately 30 minutes to one hour and she can stand for about half an hour. She has trouble reaching overhead, and her arthritis also makes it difficult for her to push and pull. Id. at 38. Roell does not drive due to her dizziness. Id. at 40. She can do some household chores but she tires quickly, and she usually stops after about 15 minutes. Id. at 41. She suffers from depression and at least two days a month the depression limits her ability to function. Id. at 43. Roell can do simple addition and subtraction in her head and she can read, but she sometimes has to read a passage multiple times for comprehension. Id. at 43. She has difficulty concentrating and following instructions, but she can follow written instructions. Id. at 44. A vocational expert (VE), Cheryl Mallon, testified that all of plaintiff's previous employment would qualify as light work. Id.

at 46.  The ALJ asked the VE if a hypothetical 51 year old claimant with a college education, the ability to read, write, and use numbers, and the ability to perform light work but limited in terms of following directions could return to Roell's past relevant work, and the VE responded that the hypothetical claimant could not perform Reoll's past relevant work.  Id.  However, the same hypothetical claimant could perform unskilled light work and there were such jobs in sufficient numbers in the national and regional economies.  Id. at 46-47.

On March 29, 2012, the ALJ issued a written decision denying Roell's claim for disability benefits.  Dkt. # 12-2, at 14-22.  The ALJ determined that plaintiff was insured until December 31, 2009 and that she alleged onset of disability on March 1, 2009.  Id. at 16.  Roell did not engage in any substantial gainful activity from March 1 to December 31, 2009.  Id.  The ALJ found that Roell had the severe impairments of "history of breast cancer, history of vulvar cancer, major depressive disorder and diabetes mellitus."  Id.  However, the ALJ did not find that Roell had an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 16-17.  When formulating Roell's residual functional capacity (RFC), he reviewed Roell's testimony and credited her testimony that she suffered from dizziness and that she would occasionally fall or stumble.  Id. at 19.  He noted that these problems began in 2010 after Roell had surgery on her vulva.  Id.  Roell performs some household chores and she goes shopping with a friend, but she does not drive due to her dizziness. Id.  The ALJ reviewed the medical evidence and noted that Roell was receiving treatment for diabetes mellitus as early as January 2009.  Id.  Roell's physician, Cathryn Meredith, M.D., reported that Roell was stable and that Roell seemed to be improving, but during follow-up visits Dr. Meredith determined that Roell was not taking her medication or complying with her treatment plan.

3

Id. Dr. Meredith noted that plaintiff appeared to be depressed, and she attributed the depression to the loss of Roell's spouse in October 2009. Id. Roell had previously been treated for breast cancer, but her treatment was successful and there was no reoccurence. Id. On June 9, 2010, Roell underwent a radical right hemivulvectomy with bilateral groin dissection and repair of femoral hernia, and there were no complications from the procedure. Id. Roell visited Robert Schlottmann, Ph.D., for a psychological consultative examination on July 1, 2010. Roell reported that she was not suicidal, and Dr. Schlottmann found that Roell's thoughts were logical and coherent. Id. He did note that Roell had some difficulty with immediate memory and delayed auditory memory, but she had no problem following simple commands or with long term memory. Id. Dr. Schlottmann's assessment was that Roell had a major depressive disorder at the time of the examination, but she seemed to have an above average intelligence and she was able to concentrate. Id. at 20. The ALJ found that Roell had the RFC to perform light work with some nonexertional limitations. Id. at 18. He stated that Roell had the ability to "understand, remember and carry out simple and some, but not all, more complex tasks with routine and typically only minimal supervision but at most times independently." Id. He determined that Roell would be unable to return to her past relevant work. Id. at 20. The ALJ declined to apply the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, due to the presence of limitations preventing Roell from performing the full range of light work, but he relied on the testimony of the VE to find that there were jobs in national and regional economies that Roell could perform with her RFC. Id. at 21. He concluded that Roell was not disabled from the time period of March 1 to December 31, 2009. Id. at 22.

On May 24, 2013, the Appeals Council found no basis to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. Dkt. # 12-2, at 2. Roell filed this case

4

seeking judicial review of the Commissioner's denial of her claim for disability benefits, and the matter was referred to the magistrate judge for a report and recommendation. The magistrate judge recommends that the Commissioner's decision be affirmed, and plaintiff has filed an objection to the report and recommendation. Dkt. ## 17, 18. Defendant has not filed a response to plaintiff's objection. In addition to this case, Roell filed a new application for widow's benefits after the Appeals Council denied review of her claim for disability benefits, and SSA has determined that Roell met the medical requirements for widow's benefits. Dkt. # 15-1, at 2.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within 14 days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id.* An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the

5

> ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.* Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.*

Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991). The ALJ issued a written decision that was reviewed by the Appeals Council, which is a final decision by an administrative agency. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole

and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

**RFC Assessment**

Plaintiff argues that the ALJ failed to cite to evidence showing that she was capable of performing light and sedentary work and that the ALJ's decision is not supported by substantial evidence. She also argues that the ALJ ignored evidence showing that plaintiff is not capable of working in a competitive environment without extra supervision, and plaintiff should have been found disabled due to her inability to maintain competitive employment.

When formulating an RFC, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's RFC] for work activity on a regular and continuous basis." Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). This requires consideration of the claimant's impairments and any related symptoms that "may cause physical and mental limitations that affect what [the claimant] can do in a work setting." Sissom v. Colvin, 512 F. App'x 762, 767 (10th Cir. Mar. 1, 2013).[1] An ALJ is not required to cite evidence supporting a finding that a claimant can actually perform each aspect of light work when formulating an RFC that the claimant is actually of such work. Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). A less extensive analysis may be appropriate when none of the medical evidence conflicts with the ALJ's conclusion that a claimant can perform light work. Wall v. Astrue, 561 F.3d 1048, 1068 (10th Cir. 2009). In this case, the ALJ concluded that plaintiff could perform light work with certain nonexertional limitations. Dkt. # 12-2, at 18. Light work is defined as follows:

---

[1] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

Plaintiff's primary argument is that the ALJ failed to cite to specific evidentiary materials to show that plaintiff could perform light work. Dkt. # 1-3. However, the Tenth Circuit has been clear that the ALJ is not required to make such specific findings that a claimant can actually perform each requirement at a particular level when formulating a claimant's RFC. Howard, 379 F.3d at 949 (rejecting the claimant's argument "that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category"). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Instead, the ALJ must consider what functional limitations and restrictions are supported by the evidence, and any limitations or restrictions must be based on a medically determinable impairment. Villalobos v. Colvin, 544 F. App'x 793, 797 (10th Cir. Aug. 26, 2013).[2] In other words, it is not a process of ruling in what work a claimant can perform but, instead, it is a process of ruling out certain types of work based on a claimant's medically determinable impairments, symptoms, and limitations. The Court finds no error with the

---

[2] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

8

ALJ's failure to cite specific evidence that plaintiff can actually perform each requirement for light work, but the Court will consider plaintiff's arguments to the extent that she argues that additional limitations should have been included in the RFC.

Plaintiff argues that the ALJ failed to mention certain evidence that would have supported additional limitations that should have been included in the RFC, and this shows that the ALJ minimized or ignored evidence favorable to the plaintiff. Plaintiff cites to a bone densitometry report prepared on July 20, 2007, and she claims that the report shows that changes in plaintiff's back and knees may be "secondary to arthritis." Dkt. # 12-7, at 91. Viewing the report as a whole, there were no adverse findings or evidence of metastatic bone disease, and the ALJ could not reasonably have based any limitations or even symptoms on this report. Plaintiff claims that the ALJ failed to mention a medical record from a November 24, 2008 office visit in which the physician, Scott A. McHam, D.O., noted that plaintiff complained of pain in her hands and feet. Id. at 402. Dr. McHam attributed the pain as a side effect of Armidex, a treatment for breast cancer, but he did not note that the pain was particularly severe or that it resulted in any physical limitations. Id. A record from plaintiff's August 5, 2008 visit notes that plaintiff complained of similar pain, but that the pain was "not limiting to her." Id. at 403. Neither the August 5 nor November 24, 2008 reports by Dr. McHam provide objective evidence that pain in plaintiff's hands or feet supported any additional limitations in her RFC, and the ALJ was not required to specifically mention this evidence in his written decision.[3] Plaintiff has identified no other medical records that were allegedly

---

[3] Plaintiff also fails to note that she did not complain about pain in her hands or feet during a subsequent visit to Dr. McHam on March 30, 2009. Id. at 401.

9

overlooked by the ALJ, and the evidence identified by the plaintiff was not of such a nature that the ALJ's failure to mention the evidence requires remand for further proceedings.

Plaintiff argues that the ALJ ignored the VE's statement that a person cannot maintain competitive employment if he or she cannot function independently with only "routine" supervision, and the ALJ's RFC finding that plaintiff needed "minimal" supervision prohibited a finding that plaintiff was not disabled. Dkt. # 18, at 3. During the hearing, the VE was asked by plaintiff's counsel how much supervision would allow for maintaining competitive employment, and the VE responded that a person should be able to function independently with "routine" supervision. Following a consultative examination, the state Disability Determination Services prepared a report and found that plaintiff had mild functional limitations from a mental impairment but that plaintiff "retains the ability to understand, remember, & carry out simple & some but not all more complex tasks w/ routine & typically w/ only minimal supervision but at most times independently." Dkt. # 12-7, at 233. Plaintiff seems to be arguing that "minimal" supervision is greater than "routine" supervision and that plaintiff should not have been found "not disabled" due to her inability to work independently. The Court has reviewed the entire report and it is clear that the findings of the state agency were intended to convey a very limited restriction on plaintiff's ability to work independently. The reviewer found that plaintiff was moderately limited in her ability to understand and remember instructions and to carry out detailed instructions, but she was not significantly limited in any other category concerning understanding, memory, or concentration and persistence. Id. at 231. The ALJ specifically cited these findings and he appropriately gave the findings reduced weight due to the non-examining nature of the review, but the findings cited by plaintiff do not by themselves show that she is unable to work in a competitive environment.

**ALJ's Credibility Analysis**

Plaintiff claims that the ALJ failed to consider evidence favorable to her when determining her credibility, and she asks the Court to remand the case for further proceedings in light of the ALJ's inadequate credibility analysis. Dkt. # 18, at 4. She argues that the ALJ improperly considered her noncompliance with treatment as a basis to partially discredit her testimony and that the ALJ failed to consider evidence that plaintiff suffered from pain that caused additional physical and mental limitations. Id. at 5.

"Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Diaz v. Secretary of Health & Humans Servs., 898 F. 2d 774, 777 (10th Cir. 1990)). Credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005). An ALJ must link his credibility findings to specific evidence in the administrative record, but this does not have to be a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). If the ALJ's credibility findings are supported by substantial evidence, the Court is not permitted to reweigh the evidence or substitute its findings for those of the ALJ. Hackett, 395 F.3d at 1173.

Plaintiff testified at the hearing before the ALJ and the ALJ summarized plaintiff's testimony as follows:

> She is dizzy on a fairly regular basis, and she would fall and would stumble every few weeks. Problems began after surgery on her vulva in 2010. Off and On, she does dishes and makes her bed. She goes stopping [sic] with someone else. Psychologically, she has good and bad days. The claimant reads, but she needs to re-read, and re-read due to issues with comprehension. She has a driver's license, but she does not drive because of light-headedness and dizzy spells.

11

Dkt. # 12-2, at 19. However, the ALJ found that the medical evidence did not support plaintiff's claims as to the severity of certain conditions. The ALJ provided a summary of the medical evidence and noted that plaintiff received treatment for diabetes in 2009, and that her compliance with prescribed treatment for diabetes declined throughout the year. Id. Also in 2009, plaintiff went for routine follow-up visits after receiving treatment for breast cancer, and there was no evidence that she was suffering from any functional limitations as a result of her prior treatment for breast cancer. Id. Plaintiff also reported that she was depressed following the death of her spouse. The ALJ also reviewed medical evidence of plaintiff's medical treatment through 2011, even though the date last insured was December 31, 2009. Id. at 19-20. He did not wholly discount her subjective complaints of dizziness and functional limitations in her daily life, but he found that the evidence did not show that plaintiff suffered from a medically determinable impairment or that her symptoms were severe enough to prevent her from obtaining and keeping gainful employment. Id. at 20.

The Court has reviewed the ALJ's written decision and finds that his credibility findings are supported by substantial evidence. Plaintiff claims that the ALJ ignored evidence from the state disability agency that there was "consistent" evidence that plaintiff suffered from the functional limitations she alleged. Dkt. # 12-7, at 233. Even if this record was not specifically mentioned in the ALJ's written decision, this would not have impacted the ALJ's decision. The report states that the evidence was consistent that plaintiff had "mild functional limitations" with daily activities and social interaction but that she retained the ability to concentrate and follow instructions. Id. The report also concludes that "she is aware of & can respond to basic hazards & can adapt to a work environment." Id. The ALJ's failure to expressly mention the limited portion of this record that is

favorable to plaintiff is not cause to remand the case for further proceedings, because the complete record supports the ALJ's credibility findings.

Plaintiff claims that the ALJ improperly discredited her testimony based on a belief that plaintiff failed to comply with a treatment plan for diabetes and that the ALJ should have taken her depression into account as a factor why she was not compliant with treatment. Dkt. # 18, at 4. Plaintiff cites no cases that depression can be a justification for failing to comply with treatment, and the Court has found no cases in which depression, apart from any other diagnosed mental health condition, would constitute a reasonable explanation for a claimant's failure to comply with treatment.[4] Wildman v. Astrue, 596 F.3d 959, 966 (8th Cir. 2010); Boyed v. Astrue, 2012 WL 5197224 (W.D. Mo. Oct. 19, 2012). The Court has reviewed the administrative record and it does not appear that plaintiff's physician made an affirmative link between plaintiff's depression and her non-compliance with medication. Dkt. # 12-7, at 118. This is supported by medical records showing that plaintiff had a history of occasional noncompliance before the death of her spouse. Id. at 120. More importantly, the ALJ noted plaintiff's noncompliance with treatment but he did not rely on this as a reason for partially discrediting her testimony. Dkt. # 12-2, at 18. Instead, he found that the medical evidence did not support the severity of the impairments and symptoms alleged by plaintiff, and this was the reason he did not fully credit plaintiff's testimony. This finding is

---

[4] There are cases in which courts have reversed for further proceedings when the ALJ improperly relied on noncompliance to discredit a claimant's testimony, but those cases involved severe mental illnesses, such as schizophrenia, that were the primary impairment alleged by the claimant. Pate-Fires v. Astrue, 564 F.3d 935 (8th Cir. 2009); Martinez v. Colvin, 2014 WL 3809048 (D. Ariz. Aug. 1, 2014); Taylor v. Colvin, 2014 WL 1246293 (C.D. Cal. Mar. 24, 2014).

supported by substantial evidence and the Court finds that the ALJ's mention of noncompliance with treatment was not improper.

Finally, plaintiff argues that the ALJ failed to make credibility findings concerning plaintiff's allegations of pain and he failed to consider the side-effects of plaintiff's medications. Dkt. # 14, at 6; Dkt. # 18, at 5. The Court finds no error in the ALJ's failure to specifically discuss plaintiff's subjective complaints of pain, because there is no evidence or testimony linking these complaints to the relevant time period of March 1 to December 31, 2009. The Court has already discussed the evidence cited by plaintiff in which she allegedly complained of pain in her hands and feet before December 31, 2009, but the Court has determined that the evidence did not show that plaintiff had any functional limitations due to any pain. See supra, at 9-10. The Court has also reviewed plaintiff's testimony and it is unclear when she alleges that she began suffering from severe pain, but it appears that most of her complaints originated after her surgery in 2010. Dkt. # 12-2, at 33. The ALJ reviewed the medical records from March 1 to December 31, 2009 and did not find that plaintiff complained of pain during this time period, and his review of the record was accurate. The ALJ was not required to discuss pain or possible side-effects of medication when there was no evidence or testimony suggesting that plaintiff complained of these problems before the date last insured, and the Court does not find that the ALJ conducted an inadequate credibility analysis.

**Subsequent Award of Widow's Benefits**

Plaintiff claims that she was subsequently awarded widow's benefits based on the same medical conditions at issue in this case, and she requests that this case be remanded for further proceedings in light of the subsequent award of benefits. Dkt. # 18, at 5. She argues that the evidence submitted in the subsequent case could be used to establish an earlier date for onset of

14

disability in this case, and the case should be remanded to allow supplementation of the administrative record. Id. at 6.

After the ALJ denied plaintiff's claim for disability benefits, she filed a claim for widow's benefits and she claimed that she became disabled on March 30, 2012. Dkt. # 15-1, at 2. The SSA did not find sufficient medical evidence to support a finding that plaintiff was disabled on that date, but the medical records showed that plaintiff was disabled as of December 1, 2012. Id. SSA found that it was "reasonable to assume that you became disabled some months prior to this, therefore 06/01/2012, is the established date that your disability began." Id.

The magistrate judge recommended that the Court decline to remand for further proceedings in light of the subsequent award of widow's benefits, because the SSA found insufficient evidence of disability before June 1, 2012 and the date last insured in this case is December 31, 2009. The SSA specifically found that the medical evidence did not establish that plaintiff was disabled before March 30, 2012, and there is little or no possibility that the medical evidence presented to the SSA in the subsequent application would tend to support a finding of disability during the relevant time period in this case. Plaintiff argues that remand is required because SSA may have relied on evidence that could be relevant in this case, and the ALJ and the Court should have the benefit of reviewing that evidence. Dkt. # 14, at 6-8; Dkt. # 18, at 5-6. A subsequent award of benefits can sometimes be a legitimate reason to remand a social security appeal for further development of the administrative record. Luna v. Astrue, 623 F.3d 1032 (9th Cir. 2010); White v. Astrue, 2010 WL 4179310 (E.D. Mo. Oct. 20, 2010). However, this is not such a case. There is no overlap of the time periods involved in the two applications for benefits, and SSA expressly found no evidence of disability before March 30, 2012. In this case, the alleged date of onset of disability was March 1,

2009 and the date last insured was December 31, 2009, and plaintiff has not shown that the evidence presented to SSA in connection with the subsequent application would be likely to have an impact on her earlier application for disability benefits. Plaintiff acknowledges that the subsequent award of benefits is not independently sufficient to warrant remand of an earlier and denied application for disability benefits. Dkt. # 14, at 7; Allen v. Astrue, 561 F.3d 646 (6th Cir. 2009). The Court finds no basis to believe that the subsequent award of benefits would have any impact on this case, and the Court finds that remand is unnecessary.

**IT IS THEREFORE ORDERED** that Report and Recommendation (Dkt. # 17) is **accepted**, and the Commissioner's decision to deny plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 4th day of September, 2014.

*Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE